# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SHAWN GREEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 18-cv-03488 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| ROBERT WILKIE, United States Secretary ) | |
| of Veterans Affairs, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Shawn Green, a veteran of the United States Navy, applied for a job as a medical supply technician at the Edward Hines Jr. Veterans Affairs Hospital ("Hines VA") in April 2017. Defendant United States Secretary of Veterans Affairs ("Agency") determined that Green was not eligible for the position because he had been recently arrested for and convicted of various crimes. Green claims that the Agency discriminated against him by failing to hire him and failing to accommodate his disabilities. The Agency has now moved for summary judgment, contending that Green has not identified any disputed issues of material fact that would allow a reasonable jury to rule in his favor. (Dkt. No. 59.) The Court agrees and thus grants the Agency's motion.

## BACKGROUND

In the present lawsuit, Green asserts two claims against the Agency. First, he claims that the Agency discriminated against him based on his disabilities by failing to engage with him in an interactive process to determine appropriate accommodations. He contends that the Agency could have provided him reasonable accommodations that would have enabled him to perform the essential functions of the position for which he applied. Second, Green claims that the Agency discriminated against him based on his disabilities by failing to hire him and gave a pretextual

reason for their decision; in other words, even though the Agency told him that it could not hire him because of his criminal history, it actually chose not to hire him because of his disabilities. In evaluating a summary judgment motion, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The following facts are undisputed, except as otherwise noted.

Green is a United States Navy veteran who claims to have numerous disabling conditions, including sickle cell trait, anemia, severe depression, post-traumatic stress disorder ("PTSD"), chronic anxiety, alcohol dependence, and various physical impairments. (Pl.'s Resp. to Def.'s Statement of Facts ("PRSOF") ¶ 1, Dkt. No. 66.) In April 2017, Green applied for a Medical Supply Case Cart Technician position at the Hines VA in Hines, Illinois. (*Id.* ¶ 4.) He completed an interview with nurse Sherry Lewis and told her that, if hired, he might need accommodations addressing physical issues with his knee, feet, and back, including "a chair to sit down and maybe some other things." (*Id.* ¶¶ 6, 64.) He also told Lewis that he might need to take leave under the Family and Medical Leave Act. (*Id.* ¶ 64.) Lewis was sympathetic to Green's needs and told him to let her know if he was hired and required those accommodations. (*Id.* ¶ 66.) Green did not raise any other mental, physical, or other issues at the interview. (*Id.* ¶ 67.) Lewis did not have access to Green's medical records and did not know that Green had received medical care through the Agency. (*Id.* ¶ 68.) The Agency made a tentative job offer to Green following the interview but informed him that he would need to pass a physical exam and background check to secure the job. (*Id.* ¶ 8.)

Federal suitability requirements, which evaluate an applicant's character and conduct, govern the position for which Green applied. (*Id.* ¶¶ 9–10.) Cheryl Thomas, a suitability specialist employed by the Agency, performed Green's initial suitability determination. (*Id.* ¶ 30.) She was

not involved in Green's interview and did not know who was involved in the interview. (*Id.* ¶ 31.) Thomas reviewed numerous documents, including a report showing that Green had been arrested seventeen times between January 2003 and June 2016. (*Id.* ¶¶ 29–30.) She graded each arrest using a standardized rubric under which Green's conduct was rated on a scale ranging from "A" (minor, meaning that the conduct or issue standing alone would not require a negative suitability determination) to "D" (major, meaning that the conduct or issue standing alone would require a negative suitability determination). (*Id.* ¶¶ 16–20.)

Using the standards prescribed by the Agency, Thomas applied letter grades to Green's seventeen arrests. (*Id.* ¶¶ 16, 33–34.) Ultimately, Thomas determined that five of Green's recent arrests and convictions warranted a "D" rating—any one of which, standing alone, would cause Green to fail the suitability determination. (*Id.* ¶¶ 18, 35.) On May 9, 2017, Thomas sent a letter to Green describing her findings and inviting him to provide a detailed response with supporting documentation. (*Id.* ¶ 36.) Green responded on June 13, 2017, providing his account of the various arrests and convictions and (in many cases) attributing his conduct to his impairments, including PTSD, alcohol abuse, G6PD deficiency and anemia, adverse reactions to medications, and other issues. (*Id.* ¶¶ 38–40.) He did not dispute that he was the subject of the seventeen arrests. (*Id.* ¶ 41.) Green also described seeking and receiving treatment for alcohol use and PTSD on several occasions between 2003 and 2016. (Def.'s Statement of Facts ("DSOF"), Ex. 19, Green Suitability Resp. at 20, Dkt. No. 61-3.) Green submitted two letters from a licensed clinical social worker at the Hines VA regarding his participation in addiction treatment. (PRSOF ¶ 42.) Finally, Green also submitted medical records, but the suitability staff were not permitted to review those materials. (*Id.*)

Next, Green's response was reviewed by Thomas Davis, who was the deciding official on Green's suitability file. (*Id.* ¶ 43.) Davis was not involved in Green's interview process and had no information about the other candidates. (*Id.* ¶ 44.) Davis made a final determination that Green had failed the position's suitability requirement and informed Green of his determination by letter on July 14, 2017. (*Id.* ¶ 45.) Davis explained that this determination was based on Green's criminal conduct, which was aggravated by Green's five serious arrests within the past three years. (*Id.* ¶¶ 45–46.) Davis wrote that he had considered Green's rehabilitative efforts, including his outpatient addiction treatment and various letters Green submitted, but that "given [Green's] extensive history of treatment without improved behavior, more time is needed to establish proper rehabilitation." (*Id.* ¶ 46.) Davis informed Stuart Souders, the Human Resources Officer at the Hines VA, that Green had received a negative suitability determination. (*Id.* ¶ 51.) Souders then withdrew Green's tentative offer via letter. (*Id.* ¶ 52.) However, Souders was not involved in Green's suitability determination and did not know anything about Green's disabilities or mental issues. (*Id.* ¶ 53.)

On July 19, 2017, Green appealed his negative suitability determination to the Merit Systems Protection Board, where he also claimed that the Agency discriminated against him by finding him unsuitable and by failing to accommodate his disabilities. (*Id.* ¶ 55.) On March 14, 2018, an administrative judge ruled for Green on the suitability issue, finding that the Agency had not sufficiently proven some of his criminal conduct and had not connected his conduct to an inability to perform the job. (*Id.* ¶ 57.) However, the administrative judge ruled against Green on his discrimination and failure to accommodate claims. (*Id.*) As a result of this ruling, Green's suitability determination was reversed as of April 2018, meaning that he would be considered suitable for the position for which he applied going forward. (*Id.* ¶ 58.) The Agency appealed, but

its appeal remained pending at the time of this motion because the Merit Systems Protection Board lacked a quorum to decide appeals. (*Id.* ¶ 59.)

The decisionmakers who decided to rescind Green's tentative job offer were generally aware of his addictions and other disabilities. Thomas and Davis knew that Green had been enrolled in the Hines VA's outpatient addiction treatment program, and Souders had signed a letter acknowledging Green's participation in that program. (PRSOF ¶¶ 1–2, 12–13.) Thomas and Davis considered Green's "rehabilitative efforts" when conducting his suitability assessment and making proposed and final suitability determinations. (*Id.* ¶¶ 14–15.) The Agency's decision was unusual—other than Green, Thomas had never before found someone unsuitable based on the absence or presence of rehabilitation, and Davis had found less than one percent of employees unsuitable based on the absence or presence of rehabilitation, among the more than 10,000 such determinations he had conducted.[1] (*Id.* ¶¶ 10, 16.) Souders had never before seen an employee be found unsuitable because of lack of rehabilitation and did not know what it meant to be "not rehabilitated." (*Id.* ¶ 3.) Souders and Thomas acknowledged that they were not qualified to determine whether Green "could be" rehabilitated, that only a qualified medical professional could make that determination, and that no qualified medical professional was involved in the suitability analysis. (*Id.* ¶¶ 4–6, 11.)

Agency staff played different roles in performing Green's suitability analysis. For example, Souders signed off on the decision to rescind Green's job offer but did not investigate

---

[1] The Agency contends that Green has not offered a sufficient basis for this fact. Certainly, the record suggests that Green was found unsuitable in the first instance because of his criminal conduct, and that presence or absence of rehabilitation applied only as a mitigating factor. But Thomas and Davis's statements suggest that Green would have been hired if he had successfully demonstrated rehabilitation. If this is so, then his absence of rehabilitation was the reason (or at least a reason) he was found unsuitable—he would have gotten the job if he had demonstrated rehabilitation. Drawing all inferences in his favor, the Court accepts Green's characterization of Thomas and Davis's testimony.

5

the suitability findings. (*Id.* ¶ 1.) Souders did not know where some of the language in Davis's final suitability determination letter came from or why it was relied upon. (*Id.* ¶ 2.) Some irregularities occurred; Thomas stated that she typically would review an applicant's personnel file but did not do so with Green's file. (*Id.* ¶ 8.) Thomas also stated that although she generally would consider how much patient interaction was required for the job for which Green applied, she did not know how much patient interaction was required for that role. (*Id.* ¶ 7.)

In addition to the above facts, Green makes certain conclusory statements in his response brief that are not supported by his Statement of Additional Facts. Specifically, he asserts that he was the best qualified candidate for the position and that he could have performed the essential functions of the position with or without reasonable accommodations. Without supporting evidence, the Court cannot defer to these assertions. *See* Local Rule 56.1(b), (g) (N.D. Ill.) (requiring evidentiary support and direct citations in support of facts asserted in a summary judgment brief); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) (parties must present admissible evidence to support their positions at summary judgment).

**DISCUSSION**

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party is entitled to a judgment as a matter of law [where] the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

As an initial matter, in his first amended complaint, Green purports to assert claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. However, the federal

6

government is not considered an "employer" under the ADA and is therefore not a proper defendant for such claims. *See* 42 U.S.C. § 12111(5)(B); *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005). Instead, Green's claims actually arise under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, which governs claims of disability-based discrimination against federal government employers. *Id.* That said, the Court "looks to the standards applied under the Americans with Disabilities Act . . . to determine whether a violation of the [Rehabilitation] Act occurs in the employment context." *Peters v. City of Mauston*, 311 F.3d 835, 842 (7th Cir. 2002); *see also Khan v. Midwestern Univ.*, 147 F. Supp. 3d 718, 722 (N.D. Ill. 2015) (ADA definition of disability is incorporated by the Rehabilitation Act). The Rehabilitation Act is violated when "a covered entity 'discriminate[s] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Steffen v. Donahoe*, 680 F.3d 738, 743 (7th Cir. 2012) (quoting 42 U.S.C. § 12112(a)). To prevail on his claims, Green must demonstrate that he "(1) was disabled within the meaning of the ADA; (2) was qualified to perform the essential functions of the relevant job either with or without reasonable accommodation; and (3) suffered an adverse employment decision because of his disability." *Sandefur v. Dart*, 979 F.3d 1145, 1151 (7th Cir. 2020).

   I.   **Green's Disabilities**

The Agency first contends that Green cannot establish that he was disabled as defined by the Rehabilitation Act. A plaintiff asserting a Rehabilitation Act claim must demonstrate that he is disabled. *Steffen*, 680 F.3d at 743. This requires a showing of "(1) [a] physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) [a] record of such an impairment; or (3) [b]eing regarded as having such an impairment." *Id.*; *see*

7

29 U.S.C. § 705(9)(B); 42 U.S.C. § 12102(1). The existence of a medical condition, on its own, does not establish disability. *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 607 (7th Cir. 2012). However, the definition of disability is "construed in favor of broad coverage," and an impairment "need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 42 U.S.C. § 12102(4)(A); 29 C.F.R. § 1630.2(j). Green here claims that his impairments have substantially limited his ability to work, which is a major life activity. 42 U.S.C. § 12102(2)(A) (defining major life activity under the ADA).

Green offers evidence suggesting that Agency employees considered him to have a substantial physical or mental impairment limiting his ability to work. For example, he told the woman who interviewed him that he might need accommodations for his knee, feet, and back, and his interviewer told him to follow up with her if he needed accommodations once hired. (PRSOF ¶¶ 64, 66.) Thomas, who conducted Green's initial disability determination, was aware that Green was enrolled in an outpatient addiction treatment program with the Agency. (DRSOF ¶ 12.) And Davis, the decisionmaker on Green's suitability determination, considered Green's history of enrollment in the Hines VA outpatient addiction treatment program and other rehabilitative efforts. (PRSOF ¶ 46.) Further, Green informed the Agency that he had resigned from federal employment in January 2012 because of "medical reasons/criminal arrest issues." (DSOF, Ex. 16, Green OF-306 at 10, Dkt. No. 61-3.) Green also told the Agency that his arrests and convictions were caused, at least in part, by his various impairments. (PRSOF ¶¶ 38–40.) Based on this information, there is at least an issue of material fact as to whether the Agency considered Green to be disabled.

Green also presents evidence that he is in fact disabled. He testified that his experience serving in the Gulf War left him "shell shocked." (DSOF, Ex. 2, Green Dep. 29:12–16, 30:2–4, Dkt. No. 61-2.) He sought treatment at the Jesse Brown VA Hospital in Chicago, Illinois for problems with sleeping, depression, and certain physical ailments. (*Id.* 33:5–16.) Around 2013, he was diagnosed with PTSD. (*Id.* 88:3–23.) He reports leaving several jobs because of PTSD, depression, and alcohol abuse, among other reasons. (DRSOF ¶¶ 18–22.) The record reveals that Green sought treatment for alcohol addiction and for psychological and physical ailments on numerous occasions, including periods of inpatient and residential treatment as recently as 2014. (Green Dep. 87:15–89:22.) Considered together, Green's treatment and arrest history suggest that his impairments have substantially limited his ability to work. Because the Court must draw inferences in Green's favor in deciding this summary judgment motion, it concludes that he has made a sufficient showing of disability for purposes of the Rehabilitation Act.

## II. Failure to Hire

Still, to survive summary judgment on his claim that the Agency declined to hire him because he was disabled, Green must demonstrate a disputed issue of material fact regarding whether he "suffered an adverse employment decision because of his disability." *Sandefur*, 979 F.3d at 1151.[2] The key question, "when considering the evidence as a whole, [is] whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017) (internal quotation marks omitted).[3]

---

[2] Green states that the Court must consider whether his evidence forms a "convincing mosaic" of discrimination, but the Seventh Circuit has rejected "convincing mosaic" as a legal test. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

[3] The Agency also argues that Green cannot establish discrimination under the burden-shifting approach set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). Green does not contest this

9

Here, the Agency gave Green a tentative job offer even after he disclosed his need for physical accommodations. When the Agency evaluated Green's arrests and convictions—which it did according to standardized principles, not discretionarily—it concluded that his conduct disqualified him from the position unless he could provide mitigating information. Importantly, the staff who decided to give Green the tentative job offer were separate from the staff who conducted the suitability review. When Green submitted evidence of his participation in alcohol addiction treatment, the Agency concluded that he had not demonstrated a long enough period of stability to overcome his criminal conduct. By themselves, those facts do not plausibly suggest discriminatory intent by the Agency. The Agency followed its own procedures in weighing the mitigating information that Green provided and was not required to accept Green's self-assessment that he had been sufficiently rehabilitated to mitigate his criminal conduct.

Green nonetheless contends that the Agency revealed its discriminatory intent in the July 2017 negative suitability determination letter sent to Green, describing the following paragraph as a smoking gun: "(7) The absence or presence of rehabilitation or efforts towards rehabilitation: Although you are currently enrolled in the Outpatient Addiction Treatment Program (ATP) at Hines VA Hospital; however, given your extensive history of treatment without improved behavior, more time is needed to establish proper rehabilitation." (DSOF, Ex. 20, Final Suitability Determination at 2, Dkt. No. 61-3.) Although the Agency concluded that Green needed more time to demonstrate rehabilitation, this alone is not enough to establish discriminatory intent. Indeed, the Agency was required to consider the extent of Green's rehabilitation as a potentially

---

point, so the Court considers the issue waived. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (party waives argument by failing to respond). In any case, the Court agrees with the Agency's position because the Agency has "articulate[d] some legitimate, nondiscriminatory reason for the employee's rejection" and Green has not presented any material evidence that the Agency's reasoning was pretextual. *McDonnell Douglas*, 411 U.S. at 802–804 (describing the parties' burdens under the burden-shifting approach).

mitigating factor pursuant to 5 C.F.R. § 731.202(c). (PRSOF ¶ 24.) Further, the Agency did not consider Green's rehabilitation as an independent basis for its suitability determination, but instead only in weighing the aggravating and mitigating circumstances. (*Id.* ¶ 25.) And the Agency relied on materials that Green chose to provide. The Agency did not disqualify Green because of alcohol addiction, but instead found that he had not demonstrated sufficient rehabilitation to overcome his negative suitability determination and the severity and frequency of his recent criminal behavior, which included recent violent and DUI arrests and five serious arrests within the past three years. (Final Suitability Determination at 2.)

Green also contends that because his alcohol addiction caused his criminal conduct, it was discriminatory for the Agency to decline to hire him based on that conduct. But an employer is entitled to take adverse action against an employee for conduct that is caused by a disability if it would have acted similarly against a non-disabled employee who did the same thing. *See Palmer v. Cir. Ct. of Cook Cnty.*, 117 F.3d 351, 352 (7th Cir. 1997); *Peyton v. Otis Elevator Co.*, 72 F. Supp. 2d 915, 919 (N.D. Ill. 1999). So, even if Green's actions were caused by his disabilities, that fact alone would not save his claim. Instead, Green must show that he was not hired ***because of*** his disabilities. Green has not presented material evidence to sustain this claim.

Green raises other collateral issues that do not rise to the level of a disputed issue of material fact. For example, he notes that an administrative judge overturned the Agency's suitability determination. Further, the position was categorized as low risk and non-sensitive, implying that the suitability analysis should have been easier for Green to clear. (PRSOF ¶ 14.) But even if the Agency made a mistake in its suitability determination, mistakes are not inherently discriminatory. *See Monroe*, 871 F.3d at 505 ("Pretext involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some

action." (internal quotation marks omitted)). The administrative judge's decision suggests only that the Agency committed errors, not that it discriminated against Green. Similarly, Green contends that the Agency almost never rejects applicants based on the absence or presence of rehabilitation, meaning that his case is unusual and potentially suspicious. Indeed, Davis testified that very few employees had been found unsuitable based on the absence or presence of rehabilitation. (DSOF, Ex. 3, Davis Dep. 37:9–16, Dkt. No. 61-2.) But even if Green's case is extremely unusual, that does not by itself show that the Agency discriminated against him. A reasonable jury could not rule in his favor on his failure to hire claim.

### III. Failure to Accommodate

Green also claims that the Agency failed to provide him with reasonable accommodations for his disabilities. Because the Agency never hired Green, this claim is limited to the job application process. Discrimination on the basis of disability includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability **who is an applicant or employee**, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A) (emphasis added). To prevail on his failure to accommodate claim, Green must establish that "(1) he is a qualified individual with a disability; (2) the [Agency] was aware of his disability; and (3) the [Agency] failed to reasonably accommodate that disability." *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 813 (7th Cir. 2015). However, an employee or applicant generally must ask for an accommodation before claiming a failure to accommodate. *Id.* at 813.

Here, the record shows that Green was never denied an accommodation by the Agency. Green mentioned physical issues with his knee, feet, and back to Lewis, who conducted his initial

interview. (PRSOF ¶ 64.) He requested "a chair to sit down and maybe some other things" as accommodations that he would need "if hired." (*Id.* ¶¶ 64–65.) Lewis reacted positively and sympathetically to those requests and told Green to let her know if he needed to secure those accommodations if he was hired. (*Id.* ¶ 66.) Green also mentioned that he might need to take leave under the Family and Medical Leave Act. (*Id.* ¶ 64.) That statement could be considered as indicating a need to take time off work to accommodate his disabilities. Green did not mention to Lewis any other issues that might require an accommodation.[4] (*Id.* ¶ 67.)

In summary, after Green told Lewis that he would need accommodations if he were hired, she offered to help him secure those accommodations and the Agency made Green a tentative job offer. A reasonable jury could not rule for Green on this claim because there is no evidence that the Agency failed to accommodate Green at any time or that it denied him employment because it did not want to provide accommodations. As discussed above, the staff who conducted Green's suitability analysis were separate from the staff who conducted his initial interview, and there is no reason to conclude that the staff who determined that Green was not suitable for federal employment knew anything about the accommodations he asked for in his interview with Lewis. There is simply no basis to find a connection between Green's request for accommodations and the Agency's decision to revoke his tentative job offer.

Green contends that the Agency should have, on its own initiative, engaged in an interactive process to see if he could be accommodated. In other words, Green asserts that the Agency bungled its suitability determination because it did not proactively consider whether Green's disabilities (in particular, his alcohol addiction) could have been accommodated. But

---

[4] Green contends that Lewis was aware of his need for reasonable accommodations related to a mental illness but has not supported that assertion with a citation to the record. In any event, the record establishes that Davis, who made the final determination on Green's suitability analysis, had no knowledge of any statements Green made to Lewis about his disabilities. (PRSOF ¶ 50.)

Green was not rejected because of his alcohol addiction, as discussed above; instead, he was rejected because of his criminal record. Further, Green does not propose an appropriate accommodation for his addiction. Finally, Green does not argue that he was impeded in any way from engaging in the application process because of his disability. Ultimately, Green has not established a contested issue of material fact on his failure to accommodate claim.

## CONCLUSION

For the above reasons, the Court finds that Green has failed to establish a disputed issue of material fact that would support a judgment in his favor and warrants sending this matter to a jury. Accordingly, Defendant's motion for summary judgment (Dkt. No. 59) is granted.

ENTERED:

Dated: June 18, 2021

Andrea R. Wood
United States District Judge